UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES L. CUTLER,

                    Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.
_____

**DECISION AND ORDER**
10-CV-663A

## **INTRODUCTION**

Plaintiff Charles L. Cutler commenced this action on August 6, 2009, pursuant to § 205(g) of the Social Security Act (the "Act"),[1] seeking review of a final determination by Michael J. Astrue, the Commissioner of Social Security (the "Commissioner"), denying disability insurance benefits and Supplemental Security Income Benefits under the Act. The plaintiff sought disability insurance benefits for impairments resulting from alcohol and opioid dependence, depression, panic disorder with agoraphobia, right shoulder rotator cuff tear, heel bursitis, and plantar fasciitis of the feet, alleging the inability to engage in any substantial activity since September 27, 2005.[2] In a written decision dated July 25, 2008, the Administrative Law Judge ("ALJ") determined that the plaintiff's

---

[1] As amended, 42 U.S.C. § 405(g).

[2] Plaintiff amended the initial onset date of disability to September 27, 2005 during the hearing before the ALJ.

substance use disorders were material factors contributing to disability and that he would not be disabled under the Act if the plaintiff were to stop his substance use. Additionally, the ALJ found that in the absence of substance use, the plaintiff retained the capacity to perform a significant number of jobs in the national economy. In a letter dated June 30, 2010, the Appeals Council affirmed the denial of benefits and denied the plaintiff's request for review.

Pending before the Court are cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The plaintiff seeks judgment on the pleadings to reverse the findings of the Commissioner on the grounds that denial of disability was not supported by substantial evidence, contending that the ALJ improperly found that the plaintiff's substance abuse was a contributing factor material to the determination of disability. Additionally, the plaintiff alleges that the ALJ failed to properly evaluate the plaintiff's subjective complaints. The Commissioner also seeks judgment on the pleadings on the grounds that finding the plaintiff's substance abuse was a material factor contributing to the determination of disability was supported by substantial evidence. Specifically, the Commissioner contends that the impairments presented by the plaintiff, including substance abuse, limited the range of work the plaintiff would be able to perform. Once the presence of substance abuse is removed from consideration in determining the plaintiff's residual functional capacity ("RFC"), the remaining limitations or combination of impairments do not

meet or medically equal the enumerated impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

For the reasons stated herein, the Court finds that the Commissioner's determination that the plaintiff's substance use was a factor material to the determination of disability is supported by substantial evidence in the record. Therefore, the Commissioner's cross-motion for judgment on the pleadings is granted and the plaintiff's motion is denied.

## **BACKGROUND**

Plaintiff filed for disability insurance benefits on January 24, 2006, and Supplemental Security Income Benefits on October 24, 2006. (Tr. 78-81).[3] The plaintiff was born in 1958 and attended school up to eleventh grade but did not graduate or obtain his GED. (Tr. 652). At the review hearing, the plaintiff testified that he had received vocational training as a welder. *Id*. The plaintiff was divorced and resided with his two children. *Id*. His past relevant work included employment as a trucking dock man, light truck driver, and railroad car repair. (Tr. 664-68).

In his application for benefits, the plaintiff stated that he stopped working on July 19, 2005 because he was laid off and ridiculed by others, resulting in his being scared to go to work. (Tr. 83, 96-97). He testified that he had undergone

---

[3] Information taken from the pleadings, administrative record, and motion papers filed in this action.

two surgeries to repair a torn rotator cuff in his right shoulder and re-injured his arm while working on railroad cars. (Tr. 655, 667-68). The injury to the right shoulder allegedly caused the plaintiff daily pain and significant weakness, leaving him unable to use it for more than five minutes. (Tr. 656-57). His shoulder pain was compounded by lower back pain and foot pain that radiated into his legs. *Id*. The plaintiff also testified that his foot pain was a result of orthotics prescribed by his foot doctor. (Tr. 655). Despite a numbness and tingling that affects his hands and back, the plaintiff stated that he was able to lift up to 30 pounds, walk for an eighth of a mile, stand for five minutes, and sit for 25 minutes. (Tr. 670-71). His physical limitations prevented him from squatting, bending, stooping, climbing, or picking up objects when experiencing numbness in the hands. (Tr. 672). The plaintiff also complained about his legs giving out, muscle spasms, and low back pain persisting every five to ten minutes. (Tr. 656-57).

The plaintiff also claimed to suffer mental impairments. He testified that he experiences crying spells every other day due to feelings of isolation and a lack of a support group. (Tr. 674). In addition, he rarely leaves the house due to panic attacks that have been present for the past fifteen years. (Tr. 660-61). The panic attacks produced palpitations, sweating, dizziness, difficulty breathing, and chest pains. (Tr. 214-18). Additional effects of the mental impairments included interference with short-term memory, irritability, and lack of attention and

concentration. *Id*. The plaintiff has also received treatment for his psychological issues at Dale Association. (Tr. 675). He was prescribed Xanax to alleviate some of his mental impairments. (Tr. 661). The plaintiff also has a history of substance abuse and addiction. The plaintiff testified that he last used drugs in 2002 and stopped using alcohol in 2006. (Tr. 662). He believed he was addicted to pain killers and was subsequently prescribed Suboxone that helped eliminate his alcohol abuse. *Id*. The plaintiff also testified that in his twenties and thirties he used marijuana, PCP, LSD, and cocaine, the latter being used on the weekends. (Tr. 664). The plaintiff's substance use resulted in inpatient drug treatment in 1997 and outpatient rehabilitation program in 2002. (Tr. 271, 662-63).

   The plaintiff's daily activities include cleaning his apartment, cooking, laundry, sweeping, taking out the trash, shopping, and driving a car. (Tr. 668-70). He stated that he could dress himself but had issues with putting on his socks. *Id.* As for the plaintiff's range of motion, he was able to hold his arms out in front of him but could not successfully raise his arms over his head. *Id*. There was no evidence that he had any limitations on pushing or pulling. *Id*.

   Following the administrative hearing, the ALJ concluded in a written decision on July 25, 2008, that the plaintiff was not disabled within the meaning of the Act and not entitled to disability benefits. The ALJ found that the plaintiff had met the insured status requirements of the Act, had not engaged in substantial

gainful activity since the alleged onset date of September 27, 2005, and experienced a severe combination of impairments. (Tr. 16). Despite the impairments, the plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17). When considering the plaintiff's impairments, including the substance use, the ALJ also found that the plaintiff could not perform his past relevant work or any other jobs in the national economy. (Tr. 19). Finally, the ALJ found that if the plaintiff stopped abusing drugs and alcohol, he would not be disabled and would be able to perform a significant number of jobs in the national economy. (Tr. 21).

After the administrative proceedings, the plaintiff petitioned this Court for review. The plaintiff alleges that the ALJ erred as a matter of law in determining that the plaintiff's drug and alcohol use is a contributing factor material to the determination of disability. The plaintiff contends that the ALJ did not properly consider the report of Licensed Clinical Social Worker ("LCSW") , Karen Whitman, who stated that substance abuse was not a contributing factor to the plaintiff's disability. Additionally, the plaintiff also alleges that the ALJ has a duty to recontact treating physicians to obtain blood and urinalysis tests to confirm the plaintiff's cessation of drug use. Lastly, the plaintiff contends the ALJ did not appropriately consider the plaintiff's subjective complaints.

The Commissioner counters that the ALJ's findings are supported by substantial evidence. The Commissioner asserts that the record contains sufficient documentation of the plaintiff's alcohol and drug abuse, including reports from Dr. Yapp and Dr. Thomas Ryan, and the plaintiff's discharge from Horizons Rehab and Recovery program ("Horizons"). Furthermore, appropriate weight was apportioned to LCSW Whitman's report because she was not an acceptable medical source. The Commissioner also alleges that the ALJ properly considered the plaintiff's subjective complaints and found that they were less than credible.

## DISCUSSION

**1. Jurisdiction and Standard of Review**

This Court has jurisdiction to review the final determination of the Commissioner denying a plaintiff's application for disability insurance benefits if the decision is a result of legal error or if the findings of fact are not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d. Cir. 2008) (internal quotation marks omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

A claimant may be granted disability benefits if found "disabled" within the meaning of the Act.[4]  The Act establishes a five-step evaluation process used when determining whether an individual is entitled to disability insurance benefits. *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); 20 C.F.R. §§ 404.1520, 416.920.  The first step in the process is to identify whether the plaintiff is currently engaged in substantial gainful activity.  A finding that the plaintiff is able to engage in substantial gainful activity precludes a finding of disability.  20 C.F.R § 404.1520(a)(4)(I).  When the plaintiff is unable to perform substantial gainful activity, the Commissioner will consider the medical severity of the impairment or combination of impairments to determine whether the impairment or combination of impairments significantly limit the claimant's physical or mental ability to perform basic work activities.  If such impairments exist, the third inquiry is whether, based on medical evidence in the record, the plaintiff has an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations.  Once the plaintiff's condition is found in the listed impairments, the Commissioner will make a determination that the plaintiff is disabled.  An unlisted impairment prompts the Commissioner to determine whether the plaintiff has the RFC to perform his past work.  In the last step, if the plaintiff is unable to perform his past work, the

---

[4]  A finding of disability is warranted when the individual is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R § 404.1504.

Commissioner will determine whether the plaintiff is able to perform any other work that exists in the national economy.

The plaintiff carries the burden of proof in the first four steps of the evaluation.  *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir. 1986).  If the plaintiff establishes that he is not capable of performing past relevant work, the burden shifts to the Commissioner to determine whether Plaintiff is capable of performing other work which exists in significant numbers in the national economy.  *See id.*


**2.  <u>Substantial Evidence Supports the ALJ's Findings that the Plaintiff has a Drug and Alcohol Addiction</u>**

The plaintiff argues that the ALJ erred in determining that the plaintiff's substance abuse was material factor in determining disability and had a duty to seek blood and urinalysis results from the plaintiff's treating physicians.  The Commissioner argues that the plaintiff's struggle with substance abuse is well documented within the record.  According to the Commissioner, the medical reports from Dr. Yapp, Dr. Ryan, and Horizons support the contention that the plaintiff's mental impairments were a result of his drug use.

A diagnosis of substance abuse, as defined by the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), is "a maladaptive pattern of substance use manifested by recurrent and significant adverse consequences related to the repeated use of substances."  Am. Psychiatric Ass'n, *Diagnostic*

9

*and Statistical Manual of Mental Disorders*, at 182 (4th ed.2000); *see Parker v. Commissioner of Social Sec. Admin.*, No. 2:10-CV-195, 2011 WL 1838981, *1, n.1 (D. Vt. 2011). When evidence of drug or alcohol abuse is present in the record, the Commissioner must determine whether the substance abuse is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a). When the plaintiff is represented by counsel and the evidence in the medical record from the treating physician is inadequate or if another medical source is inadequate to determine if the plaintiff is disabled, the ALJ has a duty to recontact the treating physician. *See* 20 C.F.R. § 416.912(e). But if "there are no obvious gaps in the administrative record and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *See Rosa v. Callahan*, 168 F.3d 72, 79, n.5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

Here, the ALJ relied on multiple sources of information to find that the plaintiff suffers from substance abuse and addiction. In an examination conducted on March 28, 2006, Dr. Ryan concluded that the plaintiff's symptoms could be related to drug and alcohol abuse or withdrawl. (Tr.16). Another indication that the plaintiff had failed to cease his drug and alcohol abuse was his discharge from Horizon Health Services for his inability and refusal to maintain abstinence and continued to self-medicate with opiates, "benzo's", and alcohol.

*Id*. The record also contains entries on September 10, 2007 and September 27, 2007 that indicate that the plaintiff was still suffering from opiate and alcohol dependence. (Tr.16 and 17). Dr. Yapp, a psychiatrist from Dale Associates, noted that the plaintiff had no issues with substance abuse since August 2007 after he was prescribed Suboxone. (Tr. 617-619). In a consultation date January 11, 2008, the plaintiff stated to Dr. Yapp that his panic attacks had subsided and that he was abstaining from drugs and alcohol. (Tr. 615). The plaintiff also related to Dr. Yapp on March 5, 2008 and April 30, 2008 that he was less depressed and feeling better. (Tr. 612 and 614). The improvement in the plaintiff's mental impairments seemed to be linked to his use of Suboxone in order to alleviate his addictions. The reports from Dr. Yapp largely coincide with Dr. Ryan's assessment that the plaintiff's mental impairments are likely linked to his substance abuse or withdrawl. The record shows an improvement in the plaintiff's mental impairments when his is not abusing drugs or alcohol. As a result, substantial evidence supports the ALJ's finding that the plaintiff still suffers from opiate and alcohol addictions, leading to an inference that the plaintiff's mental impairments, independent of the drug and alcohol abuse, are not as severe as alleged. (Tr.16).

With evidence of addictions present in the record, the plaintiff misconstrues the applicable burden. The plaintiff is in the best position to show that he would still be disabled if drug or alcohol abuse were absent from the

11

record. *See Parker* at *2. "When the record shows substance abuse, it is the [plaintiff's] burden to prove that substance abuse is not a contributing factor material to the disability determination." *Frankhauser v. Barnhart*, 403 F.Supp.2d 261, 273 (W.D.N.Y.2005) (citing *Eltayyeb v. Barnhart*, 2003 WL 22888801, *4 (S.D.N.Y.2003) (subsequent citations omitted)). As noted above, the plaintiff's mental impairments likely related to his history of substance abuse and withdrawl symptoms. The plaintiff counters this evidence with a report from a licensed clinical social worker. As noted below, the social worker's report is not accorded great weight and is outweighed by records from several other sources. The plaintiff has not set forth other evidence to offset the medical information provided by Dr. Ryan and Dr. Yapp. As a result, the plaintiff has not met his burden of disproving an ongoing addiction.

### 3. Substantial Evidence Supports the ALJ's Finding that the Plaintiff's Drug and Alcohol Use is a Material Factor in Determining His Disability

The ALJ found that the plaintiff was not disabled within the meaning of the Act because the plaintiff's substance abuse was a contributing factor material to the determination of disability. The ALJ also stated that the plaintiff would not be disabled if he stopped the substance use. The plaintiff alleges the ALJ committed an error by not considering the report of the plaintiff's treating clinical social worker, Karen Whitman, who stated that the plaintiff's substance abuse

was not a contributing factor to his impairments. In addition, the plaintiff alleges that the ALJ is arbitrarily substituting his own judgment for a medical opinion. The Commissioner argues that LCSW Whitman's assessment cannot be afforded controlling weight because she is considered a non-acceptable medical source under 20 C.F.R. § § 404.1527(a)(2). The Commissioner also argues that LCSW Whitman's report is considered evidence from "other sources" as enumerated in 20 C.F.R. §§ 404.1513(d) and 416.913(d) and cannot replace evidence from acceptable medical sources.[5]

The determination of whether an individual is disabled is reserved to the Commissioner. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999); 20 C.F.R. § 404.1527. In addition, the Commissioner reserves the ability to resolve conflicts in medical evidence. *See Monguer v. Heckler*, 722 F.2d 1033, 1039 (2d. Cir.1983). Licensed Clinical Social Workers are considered "other sources," and their medical reports cannot establish the existence of a medically determinable impairment. *See* SSR 06-3p. When there is evidence of drug or alcohol abuse present in the record, the ALJ must make a determination of whether such substance abuse is a contributing factor material to a finding of disability. *See* 20 C.F.R. § 404.1535(b)(1). The ALJ will evaluate all of the plaintiff's mental and

---

[5] Plaintiff argues that the ALJ committed an error by not mentioning the report submitted by LCSW Whitman, but the ALJ is not required to mention every piece of evidence presented when the record provides enough information to permit this court to "glean the rational an ALJ's decision." *See Monguer Heckler*, 722 F.2d 1033, 1040 (2d. Cir.1983).

physical limitations and make a determination of which impairments would remain if the plaintiff stopped using drugs or alcohol and if those limitations would be disabling.  *See* 20 C.F.R. § 404.1535(b)(2).

The ALJ found that if the plaintiff stopped using substances, he would have the RFC to lift or carry 20 pounds occasionally and 10 pounds frequently, be able to sit 2 hours and stand or walk for 6 hours in an 8 hour day, and would not be able to work in areas of unprotected heights or around heavy equipment.  (Tr. 20).  The ALJ also found that the plaintiff would have occasional limitations in pushing or pulling with the upper right extremity and an occasional limitation on his ability to crawl.  *Id*.  As for mental impairments, the ALJ found that the plaintiff had occasional limitations in his ability to understand, remember, and carry out detailed instructions with the ability to be employed in a job with moderate amounts of stress.  *Id.*  Substantial evidence in the record supports the ALJ's assessment.  On March 28, 2006, Dr. Holland noted that the plaintiff's shoulder condition was stable, and his feet and lower back were normal.  (Tr. 17).  Dr. Holland also opined that the plaintiff should avoid heavy lifting, but determined that there were no other orthopedic limitations.  *Id*.  The ALJ also apportioned some weight to Dr. Chang's report that the plaintiff could lift 15 pounds with limited pushing and pulling with the upper right extremity.  *Id*.  Additionally, the ALJ considered the report from Dr. Han K. Chang and determined that the report carried some weight.  The ALJ determined that the statement that the plaintiff

14

would miss 4 or more days a month was speculative in nature.  (Tr. 17).  The ALJ was not required to apportion controlling weight to the report of LCSW Whitman because she was not an acceptable medical source.  There was ample evidence in the record that supported the ALJ's determination.

In assessing the impairments that would remain if the plaintiff stopped his substance abuse, substantial evidence supports the finding that the plaintiff was capable of performing a full range of light work.  Taking into account the plaintiff's age, education, and work experience, substantial evidence also supports the finding that the plaintiff would not be disabled but for his substance abuse.

The plaintiff also argues that the ALJ did not apportion the appropriate weight to the plaintiff's subjective complaints.  Specifically, the ALJ did not take into account the plaintiff's prior work record as per SSR 96-7p.  The plaintiff argues that his subjective complaints are entitled to substantial credibility because his work record presents a presumption that he is willing to work if he were not disabled.  In making a determination of disability, the ALJ will consider all symptoms, including allegations of pain and the extent the symptoms "can reasonably be accepted as consistent with objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a).  When the plaintiff alleges subjective complaints of pain, the ALJ retains the ability to "evaluate the credibility of the [plaintiff] and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v.*

*Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987). Credibility determinations are reserved to the Commissioner, and the district court will give deference to the ALJ, who has observed the demeanor of the plaintiff during testimony. *See Serra v. Sullivan*, 762 F. Supp. 1030, 1034 (W.D.N.Y. 1991); *Buchbinder v. Bowen*, 709 F. Supp. 389, 395 (S.D.N.Y. 1989). The presence of subjective complaints may suggest that the plaintiff's impairment reaches a level of severity that is not apparent in the objective medical evidence. In such a case, the ALJ will consider additional factors in evaluating the credibility of the subjective complaints. *See* 20 C.F.R. § 404.1529; SSR 96-7p.[6] In addition, it is permissible for the ALJ to make a credibility determination on whether the plaintiff's testimony is consistent with medical documentation and whether the plaintiff adheres to medical treatment. *See* SSR 96-7p.

Here, substantial evidence supports the finding that the plaintiff's subjective complaints lacked credibility because of inconsistencies in the record and testimony. Plaintiff testified that he experiences crying spells every other day due to feelings of isolation and a lack of a support group. (Tr. 674). He rarely leaves the house due to panic attacks that have been present for the past fifteen years.

---

[6] These factors, as listed under 20 C.F.R. § 404.1529(c)(3)(i)-(vii), are: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of medication taken to alleviate pain; (5) other treatment available to relieve pain; (6) any other measures the claimant uses to treat pain; (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.

(Tr. 660-61). The panic attacks produced palpitations, sweating, dizziness, difficulty breathing, and chest pains. (Tr. 214-18). Additional effects of the mental impairments included interference with short-term memory, irritability, and lack of attention and concentration. *Id*. The plaintiff also alleged pain in his legs and the inability to completely lift his feet, which caused him to fall while going up the stairs. (Tr. 656). In conjunction to the leg pain, the plaintiff claimed disability due to foot problems that caused constant pain. He also stated that he had constant shoulder pain and weakness in his right arm. (Tr. 657). In contrast, a report by Dr. Christine Holland on March 28, 2006, showed that the plaintiff's gait and station were normal, he had the ability to walk on his heels and toes, and possessed a full range of motion in the spine. (Tr. 220-22). Dr. Holland also opined that the plaintiff should avoid repetitive and heavy overhead use of his right arm. *Id*. Dr. Carol Lang's determination on April 4, 2006 that the plaintiff had no limitations was consistent with Dr. Holland's assessment. (Tr. 230-31). Additionally, the plaintiff also testified that his foot problems were the result of prescribed orthotics. (Tr. 655).

The plaintiff also testified that he experienced panic attacks every other day. (Tr. 660-61). Taking into account the plaintiff's daily activities, his panic attacks do not seem to be severely limiting because he was able to clean his house, had full custody of his children and was able to care for them, drove a vehicle, and went shopping. (Tr. 676, 668-69). The ALJ considered the

plaintiff's past work history and determined that he did not have the RFC to engage in his past relevant work. (Tr. 18). The ALJ found that the plaintiff's subjective complaints in relation to the intensity, persistence, and limiting effects of the plaintiff's symptoms are not credible because they are unsupported by the medical evidence. (Tr. 21). The plaintiff's subjective complaints were inconsistent with the ALJ's RFC assessment that the plaintiff was able to engage in a full range of light work. *Id*. Under the circumstances, substantial evidence supports the determination that the plaintiff's subjective complaints were less than credible and should receive little weight.

## **CONCLUSION**

For all the foregoing reasons, the Court grants the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 9) and denies the plaintiff's motion for judgment on the pleadings (Dkt. No. 6). The Clerk of the Court is directed to close this case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: August 30, 2011